## 7880

### STATE v. MILLER.

THE CHARGE AS TO ASSAULT AND BATTERY AND PROOF THEREOF BY CIRCUM-
STANTIAL EVIDENCE held to be free from prejudicial error.

Before GARY, J., Lexington, June, 1910. Affirmed.

Indictment against John Miller. The charge complained of is:

"The defendant at the bar, John F. Miller, is indicted for assault and battery with intent to kill, and later on I will explain to you what verdicts you can find under this indictment, but in the meantime I shall address myself to another matter a few minutes, with no reference to the law of the case, and, before proceeding to charge you under the law, I hope it is unnecessary for me to dwell upon the fact that in law the home is considered, as far as the law can make it, sacred, and I hope it will not be necessary for me to dwell upon the fact that the wanton, wilful or malicious shooting into a home by any person or persons, and especially when friends and neighbors are gathered there for the purpose of a sociable evening, is a serious matter to the community in which such takes place. I want the public to know that it is serious; I want you to know that it is serious. It is serious to the community, and it is a serious matter to the party who does it, and I want to impress upon you the importance of the sanctity of the home. I do not know that I could use a better illustration than to point out to you the life and character of that great and illustrious man, John Howard Payne, who wrote those few lines, 'Home, Sweet Home.' He did not think he had accomplished much; he did not think that the fact of his writing those few lines had put him in the highest round of the ladder of fame, but subsequent history has made it so. It seems that the author of these lines went away into a foreign country known as Tunis, and while there he contracted some deadly disease,

and died and was buried. It is a singular coincidence that the man who should immortalize the home, that he himself should die so far away from home, but such was the case. He died in the little country of Tunis, and was buried, and his remains lay there, unmarked by any stone or marble slab, to tell of his whereabouts for years and years, until finally some philanthropic citizen of this country got permission from our United States government to go to Tunis and bring the remains of John Howard Payne home. It was a simple trip, easily accomplished, and although, before it was undertaken, it was heralded all over this country of ours that such an expedition was being made up. Finally it was made known all over the country that they were returning with the remains of John Howard Payne. Those in charge did not think that they had accomplished any great feat, but when they arrived in the city of New York, much to their surprise, there was an immense throng gathered at the wharf to welcome the ship, to welcome the commission, and to welcome the remains of John Howard Payne. Arrangements had been made to put whatever was mortal of him in state, and whatever money could do, and whatever science could do, and whatever music could do, to add to the occasion, was done. There his remains lay in state for a while, and then they were taken to the city of Washington, and there lay in that beautiful city. And there all that music and science and art could do was done to pay tribute to his remains. Why? Because he wrote those few lines, 'Home, Sweet Home.' That is why he was so honored. I simply say this, not for the purpose of swaying your judgment one way or the other, but I want you to feel, in the investigation of this case, that the interests and safety of the community are at stake; that the liberty of this defendant is at stake. If he wilfully shot into the house of this party, while they were gathered there for a sociable evening, then why should he be spared the penalty for such offense? If he did not do it, then that ends it right there. It

is in the home where the youth of the land is reared, where the foundation for the youth is laid, and upon the youth of the land will fall the management of the affairs of the government in the future. That is where you lay the foundation,—in the home,—and that is why it is kept sacred in the eyes of the law.

"Now, the question up to you is, did the defendant at the bar shoot into that house wilfully and maliciously on the 29th day of January, as alleged in this indictment. That is a question in which I can aid you but little, because that becomes a question of fact, and the questions of fact are for you; but as the different kinds of evidence are involved in this case, I shall give you the rules of law on the subject. The law recognizes both positive and circumstantial evidence as competent evidence to go before a jury. What I mean by positive and circumstantial evidence is this: Evidence is divided into positive or direct evidence, and circumstantial or inferential evidence. Positive evidence is where one person swears positively to a fact from his senses. He can say, 'I saw Jim,' or 'I felt him,' from his senses. You are not bound to take that. The question then depends on whether or not he heard it or saw it or felt. It depends then upon the opinion you have of the witness who gave it as to whether you accept it.

"On the contrary, circumstantial evidence is a statement of facts from which you draw a conclusion. If you go home tonight and put your horse in the stable, and you go to the stable tomorrow morning and find that your horse is out of the stable, and you follow his tracks in this direction, you see his tracks going in a certain direction, you do not need positive testimony to tell you that your horse is out of the stable, and that this is the direction he went. You draw that inference from the fact that the stable is empty, and that his tracks point in this direction. That is circumstantial evidence. But even in trying to find your horse, if you should find him in the possession of a man, and

the horse had been ridden at a considerable rate of speed, and he were to tell you, upon your questioning him, that he bought the horse from a fellow ten minutes before, that he bought the horse, and did not steal him, that is positive testimony that you can act on. The natural inference would be that you would act on circumstantial evidence, that he had stolen the horse and was trying to escape from the consequences. That is clearly a case of positive testimony and circumstantial side by side. To see him in possession of the horse, you could not say he stole it. He gives you his reason as to how he came in possession of the horse. There is no positive testimony to contradict him, and then you apply your reason and judgment. That is circumstantial evidence, and, therefore, you act on your judgment, and that is the way you try any case. Whether the evidence is positive or circumstantial, the test is, does it bring conviction to the minds of the jurors who try the case? If it does, you will convict; if not, acquit him.

"Now, as to circumtsantial evidence, the rule of law is that the facts and circumstances testified to must be consistent one with the other, and must point so directly to the guilt of the accused as to admit of no other reasonable hypothesis. If these shoes point to the fact that a man was there shooting squirrels, and not shooting into that house, then you will disregard that. It is for you to say what the evidence points to, and whether it carries conviction with it. If you reach the conclusion,—if your judgment leads you to believe that the defendant was the party who shot into that house, and did it with a deadly weapon, inflicting a wound, without provocation or excuse, he is guilty of assault and battery with intent to kill, for the reason that when a shotgun or pistol are used under circumstances of that sort that he would have been guilty of murder if death had resulted. If a man wilfully and unlawfully shoots into a crowded room, the law presumes that it was a malicious act, from the mere fact that it was done with a deadly

weapon.   The fact that you are trying now is, do you believe, in your judgment, that the State has got the right man?   If so, you will act on your judgment, and say guilty; and if you have a reasonable doubt in the case, resolve that in favor of the defendant, and say not guilty.   Now, there are one of four verdicts that you can find under this indictment, and I ask your attention while I state them, as I often have difficulty in trying to get juries to understand my meaning in defining assault and battery cases; there is more trouble in the assault and battery cases than any cases that go before a jury, assault and battery with intent to kill, and I hope that some time the solicitors that have had experience will have this assault and battery law amended so that we can write an intelligent verdict, as that is what the law requires done.

"If you bring in a verdict of guilty, that will mean that he is guilty of assault and battery with intent to kill.   If you find that it was not done maliciously; if he shot in there,—if he did shoot,—with no intention to injure any one, with no intention to kill any one, you can find a verdict of assault and battery of a high and aggravated nature. An assault is an effort to strike, but where it is carried out it is a battery.   If I hit at a man, that would be an assault. If I hit at him and struck him, that would be an assault and battery.   If you actually hit at a man, and strike him, then that is assault and battery.   You can find a verdict of guilty, which would mean guilty as charged, or guilty of assault and battery of a high and aggravated nature, or guilty of a simple assault and battery, or not guilty.   Guilty, or guilty of assault and battery of a high and aggravated nature, guilty of a simple assault and battery, or not guilty.   If it would have been murder, if it had resulted in death, he would be guilty of an assault and battery with intent to kill.   If it would have been manslaughter, it would be an assault and battery of a high and aggravated nature. Now, the difference between assault and battery of a high

and aggravated nature and a simple assault and battery is this: To slap a man's face, with intent to hurt him, that is an assault and battery, but you say it is simple assault and battery. To twist his nose, box his ears, spit in his face, or kick him, is an assault and battery, but if no injury is done it is a simple assault and battery; but whenever a deadly weapon is used, such as a razor or pistol or shotgun, or any instrument that is calculated to produce death or serious bodily harm, then it is more than simple, that makes it high and aggravated. The mere fact that a deadly weapon is used makes it more than simple—it makes it high and aggravated. That is the difference between the two. Take the record and give the defendant the benefit of any reasonable doubt in the case."

The exceptions to this charge are:

1. "That his Honor erred in charging the jury all about the life, character, death and burial of John Howard Payne, and the taking up and removal of his remains from Tunis to America, and emphasizing all that Payne said about 'Home, Sweet Home,' which charge was not only irrelevant, but was calculated to mislead, and, in fact, did mislead the jury in reaching a verdict in this case to the prejudice of the defendant.

2. "For that his Honor erred in charging the jury: 'If you go home tonight and put your horse in the stable, and go to the stable tomorrow morning and find that your horse is out of the stable, and you follow his tracks in this direction, you see his tracks going in a certain direction, you do not need positive testimony that your horse is out of the stable, and this is the direction he went, you draw that inference from this fact that the stable is empty, and that his tracks point in this direction, that is circumstantial evidence; but even in trying to find your horse, if you should find him in the possession of a man, and that the horse had been ridden at a considerable rate of speed, and if he were to tell you, upon your questioning him, that he bought the horse

from a fellow ten minutes before, that he bought the horse and did not steal him, that is positive testimony to act upon. The natural inference would be that you would act upon circumstantial evidence that he had stolen the horse and was trying to escape from the consequences. That is clearly a case of positive and circumstantial side by side.' The error being that his Honor utterly failed to explain to the jury the difference between circumstantial and positive testimony, and left the matter in such a cloudy condition that no juror could, from the instructions so given, understand the difference between positive and circumstantial evidence, to the great prejudice of the defendant, as the case at bar depended wholly on circumstantial evidence.

3. "His Honor erred in charging the jury: 'If these shoes point to the fact that a man was there shooting squirrels, and not shooting into that house, then you will disregard that.' In using the foregoing language his Honor charged the jury upon the facts of the case in violation of the Constitution of the State, because the case at bar depended wholly upon circumstantial evidence, and the question of shoes and shoe tracks was one of the main issues in the case, and the language thus used by the Court was detrimental to the defendant.

4. "Excepts because his Honor erred in charging the jury: 'The fact that you are trying now is, do you believe, in your judgment, that the State has got the right man? If so, you will act on your judgment, and say guilty; and if you have a reasonable doubt in the case, resolve that in favor of the defendant, and say not guilty.' The error being that in so charging the jury his Honor eliminates all other facts, circumstances and issues in the case and restricted the jury to the sole question of whether or not they 'believe the State has got the right man,' and not requiring the State to prove the guilt of the defendant beyond a reasonable doubt, but leaving it to the jury's belief without such proof.

5. "Because his Honor erred in charging the jury: 'Now, there are one of four verdicts you can find under this indictment and I beg your attention while I state them, as I often have difficulty in trying to get juries to understand my meaning in defining assault and battery cases; there is more trouble in the assault and battery cases than any cases that go before a jury, assault and battery with intent to kill, and I hope at some time the solicitors that have had much experience will have this assault and battery law so amended that we can write an intelligent verdict, as that is what the law requires done.' Whereas, it is respectfully submitted, that the law is the perfection of reason, and the definition of an assault and battery with intent to kill is not difficult, but simple. The error being his Honor's charge was not plain and clear, but cloudy and misleading, to the great detriment and injury of the defendant."

*Messrs. Graham & Sturkie,* for appellant. Oral argument.

*Attorney General J. Fraser Lyon,* representing *Solicitor Geo. B. Timmerman,* and *Mr. W. H. Sharpe,* contra.

April 25, 1911. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The defendant was convicted and sentenced under an indictment for assault and battery with intent to kill.

On the night of January 29, 1910, there was a candy-pulling party at the house of John Head, near Saxe-Gotha Mills, in Lexington county. While the party was in progress some one from the outside fired a shotgun, the shot striking the door of the house, and as the door was opened another shot was fired, which passed through the doorway, some of the shot striking several members of the party—Willie S. Head, Artie Hook, Henry Hook and Bertha Rish.

The evidence offered to show that the deed was perpetrated by the defendant was circumstantial.

The exceptions relate solely to the charge. We have examined the charge as a whole carefully, and are satisfied that it is free from prejudicial error.

The judgment of the Circuit Court is affirmed.